**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

FATIMA H. SHABAZ,       )
       Plaintiff,      )
              )
     v.            )     CAUSE NO.: 2:16-CV-222-JEM
              )
SENIOR CARE INSURANCE    )
SERVICES, INC., d/b/a SENIOR CARE )
INSURANCE SERVICES,     )
       Defendant.     )

**OPINION AND ORDER**

This matter is before the Court on Defendant's Motion for Summary Judgment and Designation of Evidence in Support [DE 33], filed by Defendant Senior Care Insurance Services, Inc., on November 8, 2017, and a Motion to Strike Unsupported and Inadmissable Assertions of Fact Relied Upon by Plaintiff in Opposition to Summary Judgment [DE 43], filed by Defendant on January 15, 2018.

**I.    Procedural Background**

On June 10, 2016, Plaintiff Fatima H. Shabaz filed a Complaint, and on November 10, 2016, filed an Amended Complaint, alleging that Defendant Senior Care Insurance Services discriminated against her on the basis of her gender, subjected her to a hostile work environment, and retaliated against her for complaining about the harassment, in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Equal Pay Act, as amended. On November 8, 2017, Defendant filed the instant Motion for Summary Judgment. Plaintiff filed a response on January 1, 2018, and on January 15, 2018, Defendant filed a reply and the instant Motion to Strike. Plaintiff responded to the  Motion to Strike on January 29, 2018, and on February 5, 2018, Defendant filed a reply.

The parties filed forms of consent to have this case assigned to a United States Magistrate

Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

## II.     Summary Judgment Standard

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is appropriate – in fact, is mandated – where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotations omitted).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323;  Fed. R. Civ. P. 56(c). The moving party may discharge its initial responsibility by simply "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. When the nonmoving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar

materials negating the opponent's claim. *Id.* at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials, and, if the moving party has "produced sufficient evidence to support a conclusion that there are no genuine issues for trial," then the burden shifts to the nonmoving party to show that an issue of material fact exists. *Becker v. Tenenbaum-Hill Assoc.*, 914 F.2d 107, 110-111 (7th Cir. 1990) (citations omitted); *see also Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1261 (7th Cir. 1993).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e)(2), (3); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," but must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor

of that party. *See Liberty Lobby*, 477 U.S. at 255; *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009); *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Liberty Lobby*, 477 U.S. at 249-50.

### III.    Motion to Strike

Defendant moves to strike a number of assertions of fact made by Plaintiff in her response to the Motion for Summary Judgment, arguing that they are unsupported by evidence, inadmissible hearsay, impermissible legal conclusions, contradicted by her own testimony, or otherwise do not meet the evidentiary standards. Plaintiff argues generally that her deposition testimony reflects her personal knowledge and is corroborated.

Federal Rule of Civil Procedure 56(c)(4) provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). The Federal Rules of Evidence further provide, in relevant part, that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony." Fed. R. Evid. 602. Hearsay, which is defined as a declarant's out-of-court statement that a "party offers in evidence to prove the truth of the matter asserted in the statement," Fed. R. Evid. 801(a)(c), is not admissible unless allowed by statute, the Federal Rules of Evidence, or other rules created by the United States Supreme Court, *see* Fed. R. Evid. 802.

Defendant objects to a number of statements in the fact section of Plaintiff's response brief. Defendant argues that she lacked the personal knowledge to make assertions of fact regarding the job tasks of the male insurance agents as well as those agents' salaries and commission schedules. Plaintiff's response brief cites only to her deposition testimony and interrogatory answers in support of her assertions regarding her coworkers, and the only source of that information that she identified in her deposition was other unidentified coworkers. Shabaz Dep. 41:7-42:8. This is inadmissible hearsay. *See, e.g.,Wilson v. Lear Seating Corp.*, 258 F. Supp. 3d 916, 919 (N.D. Ind. 2017) ("The only evidence that [the plaintiff] cites to support this assertion is testimony from her own deposition. Because she offers [another]'s statements 'to prove the truth of the matter asserted,' the statements are hearsay.") (quoting Fed. R. Evid. 801(c)); *Rogers v. Waukegan Pub. Sch. Dist. 60*, 924 F. Supp. 2d 940, 946 (N.D. Ill. 2013) ("The only record evidence that [the plaintiff] cites to support this assertion is testimony from [his] own deposition . . .This testimony is hearsay under Federal Rule of Evidence 801(c) because [the plaintiff ] testified to the statement of an out-of-court declarant . . . in an effort to establish the truth of the matter asserted by the declarant."). In her response to the Motion to Strike, Plaintiff argues generally that other testimony corroborates her statements, but does not address the basis of Plaintiff's purported knowledge about her male co-workers' salaries, commission schedules, or job tasks, and does not point to any particular portion of the deposition testimony that bolsters her assertions. *See Sommerfield v. City of Chicago*, 863 F.3d 645, 650 (7th Cir. 2017) ("The judge rightly declined to wade through the voluminous record to find evidence on a counseled plaintiff's behalf."). Because the only evidence Plaintiff cites in support of her contentions regarding the male insurance agents' job duties, salaries, and earned commissions are her own unsupported statements, they must be stricken. "A party may not rely upon inadmissible

hearsay to oppose a motion for summary judgment." *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) (citing cases).

Defendant argues that a number of Plaintiff's other statements are contradicted by her own testimony. For example, Plaintiff states that she was not reimbursed for travel expenses, which Defendant argues is inconsistent with her deposition testimony that she received a gas card. Defendant also argues that there is no factual support provided for several of Plaintiff's assertions, such as her statements that her boss constantly used profane language, including sexist comments, or that she would not have been terminated had she not filed the EEOC charge. Plaintiff also includes legal conclusions in her recitation of facts.

Statements for which Plaintiff has not provided any evidentiary support cannot be used to counter a motion for summary judgment. *Abuelyaman v. Ill. State Univ.*, 667 F.3d 800, 812 (7th Cir. 2011) ("It is well settled that conclusory allegations and self-serving affidavits, without support in the record, do not create a triable issue of fact.") (quoting *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 354 (7th Cir.2002)); *Compania Administradora de Recuperacion de Activos Administradora de Fondos de Inversion Sociedad Anonima v. Titan Int'l, Inc.*, 533 F.3d 555, 562 (7th Cir. 2008) ("The district court cannot be expected to search through the entire record for evidence that may support a party's contentions; a party must point to specific evidence that creates a genuine issue of material fact for trial. Furthermore, . . . [the plaintiff]'s proffered statements . . . were entirely without foundation, . . . based entirely on speculation and hearsay. The district court correctly gave no credence in its opinion to such conclusory and unsupported assertions.") (citing Fed. R. Civ. P. 56(e)); *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 898-99 (7th Cir. 2003) ("[The Seventh Circuit] ha[s] repeatedly assured the district courts that they are not required to scour every inch of

the record for evidence that is potentially relevant to the summary judgment motion before them. . . .This means that the question before us is whether the evidence [the plaintiff] properly presented to the district court can support. . .his . . discrimination claim or his retaliation claim."). Likewise, statements or conclusions that contradict prior sworn testimony cannot be used to defeat a motion for summary judgment where there is no explanation or attempt to resolve the disparity. *LaFary v. Rogers Grp., Inc.*, 591 F.3d 903, 908 (7th Cir. 2010) ("A plaintiff cannot defeat a motion for summary judgment by 'contradict[ing] deposition testimony with later-filed contradictory affidavits.'") (quoting *Ineichen v. Ameritech*, 410 F.3d 956, 963 (7th Cir.2005)). Accordingly, the statements included by Plaintiff for which she does not identify supporting evidence or for which that evidence is inadmissible hearsay, statements for which the evidence is contradicted without explanation, and statements that are legal conclusions masquerading as facts will not be considered by the Court in support of her response to the Motion for Summary Judgment, and are not included in the recitation of material facts below.

## IV.    **Material Facts**

Plaintiff Fatima Shabaz was hired by Fred Ulayyet, the president of Defendant Senior Care Insurance Services, in March 2014. Defendant is in the business of selling insurance policies. Plaintiff initially performed clerical office work and trained for a sales position. In September 2014, Plaintiff was assigned to a sales position in the field. Ulayyet would give her the names of potential customers and she would use her own vehicle to call on prospective clients. Plaintiff was not given an office. The other sales agents had office space and saw clients there as well as going into the field to call on prospective clients. They had office sales functions in addition to field work, while Plaintiff was assigned exclusively to the field but sometimes returned to the office to do tasks like

copying and filing. Plaintiff's starting salary was $45,000, but other sales agents' starting salary was $40,000. There was a standard commission schedule to pay agents for selling different types of insurance policies. The owner of the company and two male relatives of the company owner, both of whom had been working for Defendant for a long time, drove company cars for their work as sales agents. Another company car was provided to a person who worked as an independent contractor for Defendant. Gas cards were given to a number of employees on different occasions, including to Plaintiff and to a female staff person who was ineligible for commissions. By November 2015, Plaintiff had begun to complain to Ulayyet that she was the only agent solely in the field without office space, that she felt she should be getting more money in commissions, and that she received fewer or lower-quality leads than other agents.

On June 23, 2015, Plaintiff complained via email to the executive administrator that Ulayyet used "inappropriate language:" in particular, he used profanity and made reference to "jacking off." She referred to an earlier conversation with the administrator about a year prior to the email during which she had complained about Ulayyet's inappropriate language. Ulayyet admitted, and other employees reported, that he used profanity and argued with male employees as well as with Plaintiff. On one occasion he showed vacation pictures at the office and mentioned women there "showing their boobs and everything." On July 8, 2015, Ulayyet was angry at Plaintiff for not answering her phone as quickly as he wanted and yelled at her, including the use of profanity, and poked her in the arm. She filed a police report after the confrontation.

In October 2014, Defendant presented its employees with a written employment contract and advised them that signing it was a condition of their continued employment. By October 2015, all but two employees had signed it: a male employee who quit his job, and Plaintiff. Plaintiff used the

signing as an opportunity to negotiate terms of her employment. On October 1, 2015, Plaintiff sent an email to Ulayyet regarding requests she had, and on October 2, 2015, she met with Maen Hassuneh, in-house counsel, to discuss the terms she wished to have incorporated into the agreement. She sent a follow up email to Ulayyet summarizing the conversation. Plaintiff's paycheck, which normally would have been given to her on November 3, 2015, was withheld because she had not signed the contract. On November 3, 2015, Plaintiff attended a meeting with Ulayyet and Hassuneh to again discuss Plaintiff's conditions for signing the employment contract. Plaintiff filed an EEOC charge complaining of gender discrimination on November 6, 2015. On November 9, 2015, Plaintiff again met with Ulayyet. Afterwards, she wrote a summary memorializing what she understood to be their agreement about her work environment, although she was told that the employment conditions they discussed would just be an agreement between the parties rather than an amendment to the contract. Plaintiff never signed the employment contract. In his affidavit, Hassuneh asserts that "[w]hile the first EEOC charge was pending we [employees of Defendant] took care not to take any actions that might be construed as retaliation, including temporarily ceasing our efforts to have her sign the Employment Contract." Hassuneh Aff. ¶ 20. Plaintiff received her November 3, 2015, paycheck on November 17, 2015.

On March 14, 2016, the EEOC closed the investigation and sent Plaintiff the notice of her right to sue. On a date sometime in the middle of March 2016, Ulayyet complained to Plaintiff about how much the investigation cost him, showing her a $9,000 legal bill. On March 22, 2016, she received an email from Hassunah renewing the request that she sign the employee contract, with another email on March 25, 2016, from him reiterating the request that Plaintiff sign the employment agreement. A meeting was set up between Plaintiff and Hassunah, but Plaintiff could not attend the

meeting because of job assignments from Ulayyet. On March 29, 2016, Plaintiff was informed via email that her employment was terminated.

## V. Analysis

Defendant moves for summary judgment on Plaintiff's claims for discrimination and retaliation under Title VII of the Civil Rights Act of 1964 and the Equal Pay Act. Plaintiff argues that there are genuine issues of material fact as to each of her claims.

### A. Sex Discrimination

Title VII prohibits discrimination "against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In order to make a successful claim for discrimination pursuant to the burden-shifting *McDonnell Douglas* framework, a Title VII plaintiff must first "establish[] that (1) [s]he is a member of a protected class; (2) [s]he was meeting [her] employer's legitimate performance expectations; (3) [s]he was subjected to an adverse employment action; and (4) similarly situated employees outside of [her] protected class were treated more favorably by the employer." *Reed v. Freedom Mortg. Corp.*, 869 F.3d 543, 547-48 (7th Cir. 2017) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)) (other citations omitted); *see also Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018) ("[T]he well-known and oft-used *McDonnell Douglas* framework for evaluating discrimination remains an efficient way to organize, present, and assess evidence in discrimination cases."). Once the plaintiff has established this prima facie case, it "creates a presumption of discrimination, and the 'burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason' for its employment decision." *McKinney v. Office of Sheriff of Whitley Cty.*, 866 F.3d 803, 807 (7th

Cir. 2017) (quoting *McDonnell Douglas*, 411 U.S. at 802). Then "the burden shifts back to the plaintiff, who must present evidence that the stated reason is a 'pretext,' which in turn permits an inference of unlawful discrimination." *Id.*, quoting *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012).

In its summary judgment analysis, the Court must consider whether "the evidence would permit a reasonable factfinder to conclude that the plaintiff's . . . sex . . . or other proscribed factor caused the discharge or other adverse employment action. Evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016); *see also Chaib v. Geo Grp., Inc.*, 819 F.3d 337, 341 (7th Cir. 2016). Accordingly, "the sole question that matters" is "[w]hether a reasonable juror could conclude" that Plaintiff would have been treated differently if she had been a man, "and everything else had remained the same." *Ortiz*, 834 F.3d at 764 (citing *Achor v. Riverside Golf Club*, 117 F.3d 339, 341 (7th Cir. 1997).

There is no dispute in this case that Plaintiff belongs to a protected class by virtue of her gender. Defendant disputes that she was meeting the legitimate expectations of her employment, that she suffered a materially adverse employment action, and that similarly situated employees outside the protected class received favorable treatment. In addition, Defendant argues that it is entitled to summary judgment on claims that are barred by the applicable statute of limitations.

First, Defendant argues that any claim that arises from Plaintiff's assignment from the office to the field is time-barred because it occurred more than 300 days before she filed her EEOC charge. In order to bring a Title VII claim, "[a] plaintiff must file a charge with the EEOC detailing the alleged discriminatory conduct within the time allowed by statute, and the EEOC must issue a

right-to-sue letter. In addition, claims brought in judicial proceedings must be within the scope of the charges filed with the EEOC." *Conner v. Ill. Dep't of Nat. Res.*, 413 F.3d 675, 680 (7th Cir. 2005). For a Title VII plaintiff in Indiana, "the applicable limitations period is 300 days" and "begins to run when 'the alleged unlawful employment practice occurred.'" *Adams v. City of Indianapolis*, 742 F.3d 720, 729–30 (7th Cir. 2014) (quoting 42 U.S.C. § 2000e–5(e)(1)). Defendant argues that Plaintiff cannot bring a Title VII claim for her assignment to the field because it happened more than 400 days before she filed her first EEOC charge. Plaintiff argues that her claims of discrimination are not based on her assignment to the field. Accordingly, the Court need not address Defendant's arguments that the claim based on Plaintiff's field assignment is time-barred, because she is not proceeding on that claim.

In her response, Plaintiff argues that "there are genuine issues in dispute as to whether Shabaz suffered an adverse employment action, during the 300-day period of time from which she filed her initial EEOC Charge, as it pertains to her work environment, as well as the manner in which Ulayyet provided her with sales leads." Pl. resp. br. 9. Even presuming that she is referring to the 300 days prior to filing the charge, and assuming that the claims are within the scope of the charge she filed, she must demonstrate that she suffered an adverse employment action.

To be considered materially adverse, an employment action must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Alamo v. Bliss*, 864 F.3d 541, 552 (7th Cir. 2017) (quoting *Stockett v. Muncie Ind. Transit Sys.*, 221 F.3d 997, 1001 (7th Cir. 2000)). "[A]n adverse employment action need not be quantifiable in terms of pay or benefits," but "not everything that makes an employee unhappy is an actionable adverse action." *Hilt-Dyson v. City Of Chicago*, 282 F.3d 456, 465-66 (7th Cir. 2002) (quoting *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th

Cir.1996)). Although determining whether a particular employment action is materially adverse will depend on the unique circumstances of each case, the Seventh Circuit Court of Appeals has identified three general categories of actionable, materially adverse employment actions: (1) an employee's compensation or benefits are diminished or she is fired; (2) a nominally lateral transfer or other change in her job significantly reduces her career prospects; or (3) work conditions are changed so as to subject her to "a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in [her] workplace environment." *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1116 (7th Cir. 2009) (citing *O'Neal v. City of Chicago*, 392 F.3d 909, 911 (7th Cir. 2004)); *see also Herrnreiter v. Chi. Hous. Auth.*, 315 F.3d 742, 745 (7th Cir. 2002) (providing that the last category includes "cases of harassment-mistreatment of an employee by coworkers or supervisors that is sufficiently severe to worsen substantially his conditions of employment as they would be perceived by a reasonable person in the position of the employee") (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 786-88 (1998); *Hilt-Dyson*, 282 F.3d at 462-63).

Plaintiff argues that her work efforts were unfairly compared to insurance agents who were not field agents, and that her ability to generate commissions was constrained. To the extent that she is asserting that her compensation was reduced, that would be an adverse employment action, but she does not produce any evidence or even argument that her base compensation or the amount she could earn in commission declined. The only identified employment actions that significantly changed Plaintiff's work conditions were her assignment to the field, the claim for which is time-barred, and her termination, which will be addressed in more detail below. Furthermore, Plaintiff cannot meet the rest of her burden under *McDonnell Douglas.*

Defendant argues that Plaintiff was not meeting the legitimate employment expectations of

her employer . In her response brief, she states generally that "a genuine dispute exists as to whether Shabaz has adequately made a discrimination claim under Title VII," but she does not include any argument, let alone citation to evidence, to indicate that she was meeting her employer's legitimate expectations. Similarly, Plaintiff does not identify any comparators or provide any facts that would indicate that similarly-situated men were treated differently than she was. As the Seventh Circuit Court of Appeals has described it, "whether employees are similarly situated is a 'flexible, common-sense, and factual' inquiry. Relevant factors include 'whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications.'" *David v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 225–26 (7th Cir. 2017) (quoting *Coleman*, 667 F.3d at 841; *Warren v. Solo Cup Co.*, 516 F.3d 627, 631 (7th Cir. 2008)). In her recitation of facts, Plaintiff alleges that her "salary and commissions . . . were significantly less than male licensed insurance agents who were similarly situated," citing only to her answer to interrogatories and her own deposition. Defendant provides evidence that all agents were paid according to a common commission schedule, and received the same amount for Medicare supplements. Defendant also points out that Plaintiff's starting base salary was the highest of any sales agent, and that three men with more experience and better sales records than Plaintiff received a lower base salary in 2014 and 2015 than Plaintiff. Plaintiff has failed to specifically identify anyone she claims was similarly-situated to her but paid more, and Defendant has put forth evidence that men with more experience received lower salaries and the same commission schedule as Plaintiff. In her statement of facts, Plaintiff also asserts generally that male agents received company vehicles and gas cards while she did not, but Defendant points out that the people who received cars were not valid

comparators: two were family members of the president who had been with the company significantly longer and were top sales producers, and the other was an independent contractor. As to the gas cards, Defendant points to evidence that other women were given gas cards, and that Plaintiff herself reported receiving a gas card at least once. In short, Plaintiff has failed to identify any evidence or even argument establishing that she was meeting her employer's legitimate expectations, and has failed to identify any comparators who were similarly-situated to Plaintiff but treated differently.

B.    Hostile Work Environment

Defendant also moves for summary judgment on Plaintiff's claim for a hostile work environment. Plaintiff argues that there is a genuine dispute as to whether she was subject to a hostile work environment.

"Title VII prohibits the creation of a hostile work environment. . . . In order to prevail on such a claim, a plaintiff must show that the work environment was so pervaded by discrimination that the terms and conditions of employment were altered." *Chaib v. Indiana*, 744 F.3d 974, 985 (7th Cir. 2014) (internal quotation marks and citations omitted). To make this determination on summary judgment, courts consider "the surrounding circumstances, including whether the discriminatory conduct was frequent or severe; whether the conduct was physically threatening or humiliating; and whether the conduct unreasonably interfered with her work performance. . . . Title VII is not a general code of workplace civility, nor does it mandate 'admirable behavior' from employers." *McKenzie v. Milwaukee Cnty.*, 381 F.3d 619, 624 (7th Cir. 2004) (citing *Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 693 (7th Cir. 2001). Therefore, a claim for a hostile work environment "requires proof of four elements: (1) the plaintiff's workplace was both subjectively and objectively offensive;

(2) the plaintiff's sex was the cause of the harassment; (3) the harassment was severe or pervasive; and (4) there is a basis for employer liability." *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 561 (7th Cir. 2016).

In support of her claim for a hostile work environment, Plaintiff reports that she was subjected to Ulayyet's profane language, including sexist comments, and that there was a physical confrontation with Ulayyet, her boss. Defendant argues that there is no evidence that Ulayyet made sexist comments, or that his profanity and vulgarity were related to sex or to the fact that Plaintiff is female. In support of her assertions, Plaintiff cites to her deposition, in which she reported that Ulayyet used profanity and spoke of "jacking off," but that she did not know if these were intended as sexual advances to her, Shabaz Dep. 45:14-46:15, and that he talked about women at his vacation destination "showing their boobs and everything," Shabaz Dep. 46:15-23. When asked the basis for her belief that the comments were made to her because of her gender, she stated, "I really couldn't answer that one. I mean, I don't know why he said that, but I don't think it was appropriate to say that in front of a lady." Shabaz Dep. 48:17-22.

The profanity Plaintiff considered "inappropriate" did not refer to gender and was not necessarily sexual in nature. Plaintiff provides no evidence that this behavior took place only around her or only around women, and Defendant provides evidence, uncontradicted by Plaintiff, that Ulayyet used profane and angry language with all employees. In his affidavit, Hassuneh stated that Ulayyet "has treated his employees disrespectfully, unpleasantly, and sometimes profanely when he was frustrated or angry. . . This applies to men and women alike." Hassuneh Aff. ¶ 6. In this case, the actions Plaintiff complains of were certainly not "admirable behavior," but her boss's use of two phrases – phrases which only sometimes are used to refer to sexual conduct and which she does not

claim were directed at her because of her gender – and one reference to seeing topless women while on vacation, even combined with the single incident where Ulayyet physically poked Plaintiff in anger, do not demonstrate that the workplace was subjectively and objectively hostile. Nor has Plaintiff shown evidence that she subjected to the unpleasant conduct because she was a woman, or that her complaints about the conduct would have been treated differently had she been a man. *See Orton-Bell v. Indiana*, 759 F.3d 768, 774–75 (7th Cir. 2014). Even viewing the facts in the light most favorable to Plaintiff, no reasonable trier of fact "could find that plaintiff was harassed, that she was harassed because of her sex, and that the conduct was severe or pervasive enough to create a subjectively and objectively hostile work environment." *Haugerud*, 259 F.3d at 693.

C.    Pay Discrimination

Defendant moves for summary judgment on Plaintiff's claims for pay discrimination pursuant to Title VII and the Equal Pay Act.

"The Equal Pay Act forbids employers from paying different rates to men and women for the same work at the same 'establishment.'" *Jaburek v. Foxx*, 813 F.3d 626, 632 (7th Cir. 2016) (quoting  29 U.S.C. § 206(d)(1)). Accordingly, "[t]o establish a prima facie case of wage discrimination under the EPA," plaintiff must demonstrate "that '(1) higher wages were paid to a male employee, (2) for equal work requiring substantially similar skill, effort and responsibilities, and (3) the work was performed under similar working conditions.'" *Warren*, 516 F.3d at 629 (quoting *Stopka v. Alliance of Am. Insurers*, 141 F.3d 681, 685 (7th Cir.1998)).

Defendant argues that none of the male agents' work conditions were similar to those of Plaintiff. "In determining whether two jobs are equal, the crucial inquiry is 'whether the jobs to be compared have a "common core" of tasks, i.e., whether a significant portion of the two jobs is

identical.'" *Cullen v. Ind. Univ. Bd. of Trustees*, 338 F.3d 693, 698 (7th Cir. 2003) (quoting *Fallon v. Illinois*, 882 F.2d 1206, 1209 (7th Cir.1989)). Plaintiff states generally that all of the insurance agents sell insurance supplements, and their work performance and productivity is measured that way. She also asserts that she earned less in commissions than the male agents did, in part because of the manner in which she was given sales leads. However, Plaintiff does not include any facts about the core duties of the male agents' positions as performed, nor does she identify the salary or commissions of any male employees. She merely states, "Shabazl (sic) has raised genuine issues in dispute that she earned less in commissions due to the manner in which Ulayyet gave her sales leads, and the manner in which SCIS evaluated her job performance and productivity as an insurance agent." Pl. Br. at 11. Nowhere does she identify any of the male agents by name, their job duties, or their salaries. Even if somewhere in the evidence she has appended to her brief there may be some facts in support of her assertions, she does not identify them, either with citation to admissible evidence in her statement of facts or in the argument portion of her brief. *See Bordelon v. Bd. of Educ. of the City of Chi.*, 811 F.3d 984, 989 (7th Cir. 2016) ("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter . . . [and] "to withstand summary judgment, [the plaintiff] must point to evidence upon which a trier of fact could conclude that [her argument as to the facts is correct].") (quoting *Gabrielle M. v. Park Forest-Chi. Heights, Ill. Sch. Dist. 163*, 315 F.3d 817, 822 (7th Cir.2003) (quotation marks omitted).

Defendant argues that the male agents in the office who had higher base salaries than Plaintiff received that pay not because of their gender, but because they held jobs requiring different skill, effort, responsibility, and work conditions. Plaintiff does not put forth any evidence of what other agents were paid, any evidence of the difference in their leads, or anything other than

supposition and assertion in support of her claims. This is insufficient to survive summary judgment. Plaintiff's claim for pay discrimination under Title VII also fails, since it requires Plaintiff to establish a prima facie case of discrimination. *See, e.g., Warren*, 516 F.3d at 630. However, as described above, Plaintiff has not established that she was meeting her employer's legitimate job expectations or that she was paid less than a similarly-situated male employee.

D.    Retaliation

Defendant also moves for summary judgment on Plaintiff's claim that she was retaliated against for complaining about discrimination. Plaintiff argues that shows fired for filing the November 2015 EEOC Charge. Defendant argues that the timing is too distant for Plaintiff to demonstrate retaliation, since several months passed from her filing of the charge and her termination.

"To establish retaliation under the direct method, a plaintiff must present evidence, direct or circumstantial, showing that: (1) [s]he engaged in a statutorily protected activity; (2) [s]he suffered a materially adverse action; and (3) a causal connection exists between the two." *Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 (7th Cir. 2012) (citing *Burks v. Wisc. Dep't of Transp.*, 464 F.3d 744, 758 (7th Cir.2006)). "A plaintiff demonstrates a causal connection by showing that the defendant 'would not have taken the adverse ... action but for [her] protected activity,'" and "[i]f a plaintiff can assemble from various scraps of circumstantial evidence enough to allow the trier of fact to conclude that it is more likely than not that discrimination lay behind the adverse action, then summary judgment for the defendant is not appropriate." *Baines v. Walgreen Co.*, 863 F.3d 656, 661-62 (7th Cir. 2017) (quoting *Greengrass v. Int'l Monetary Sys. Ltd.*, 776 F.3d 481, 486 (7th Cir. 2015); *Morgan v. SVT, LLC*, 724 F.3d 990, 996 (7th Cir. 2013)).

In this case, there is no dispute that Plaintiff engaged in protected activity by filing an EEOC Charge, and that she was terminated from her employment, a materially adverse action. Defendant argues that Plaintiff was terminated because she refused to sign an employment agreement, not because of the EEOC charge, and that Plaintiff cannot offer admissible evidence of any causal connection between the EEOC charge and the termination.

Plaintiff was attempting to negotiate terms of her employment before she signed the employment agreement. As soon as she filed the EEOC charge on November 15, 2015, Defendant's in-house counsel stated that the employees intentionally ceased interacting with her in any way that could possible be construed as retaliation, and stopped asking her to sign the agreement. Plaintiff received her Notice of Dismissal and Notice of Suit Rights on March 16, 2016. Around that same time, in mid-March, 2016, she had a conversation with Ulayyet during which she alleges that they discussed her EEOC charge and that he complained about the legal bills he incurred as a result. On March 22, 2016, she received an email renewing the requests that she sign the employment contract. Although a meeting was set up in the office on March 25, 2016, she was unable to attend because of her other job duties, and she was terminated on March 29, 2016. Plaintiff asserts that she intended to sign the agreement, although she does not cite to any evidence that Defendant knew she intended to sign it. Defendant asserts that Plaintiff was terminated for her failure to sign the employment agreement. However, prior to Plaintiff filing the EEOC charge, Defendant's representatives met with her to negotiate terms of her employment as part of her signing the employment agreement, but stopped asking her to sign it once the charge was filed. Once the EEOC investigation was over, they again asked Plaintiff to sign the employment agreement, and she tried to attend a meeting with the in-house counsel, but could not do so before she was fired. Defendant asserts that Plaintiff was

terminated primarily because of her failure to sign the employment agreement. Although the Court

will not "act as a super personnel department that second-guesses employers' business judgments,"

*Stephens v. Erickson*, 569 F.3d 779, 788 (7th Cir. 2009) (quoting *Millbrook v. IBP, Inc.*, 280 F.3d

1169, 1180 (7th Cir.2002)), in this case a reasonable factfinder could conclude that Defendant did

not honestly believe this reason. *Stockwell v. City of Harvey*, 597 F.3d 895, 901–02 (7th Cir. 2010).

Plaintiff was terminated within a few days of Defendant being made aware that the EEOC

investigation had closed and a few days after Plaintiff's boss complained to her about the cost of the

investigation, but several months after it had stopped requesting that she sign the employment

agreement. Accordingly, summary judgment is not appropriate on Plaintiff's claim for retaliation.

## VI.    Conclusion

For the foregoing reasons, the Court hereby **GRANTS in part and DENIES in part**

Defendant's Motion for Summary Judgment and Designation of Evidence in Support [DE 33] and

**GRANTS** the Motion to Strike Unsupported and Inadmissable Assertions of Fact Relied Upon by

Plaintiff in Opposition to Summary Judgment [DE 43]. The Court grants summary judgment in favor

of Defendant Senior Care Insurance Services, Inc., and against Plaintiff Fatima H. Shabaz on Counts

I-III of Plaintiff's Complaint. The case will proceed on her claim for retaliation under Title VII.

So ORDERED this 31st day of July, 2018.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:    All counsel of record